IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

JOANN WHITING,

Plaintiff,

v.

CIVIL NO.: WDQ-09-1619

THE JOHNS HOPKINS HOSPITAL

and

THE JOHNS HOPKINS HEALTH SYSTEM CORPORATION,

Defendants.

* * * * * * * * * * * * *

MEMORANDUM OPINION

Joann Whiting sued The Johns Hopkins Hospital and The Johns Hopkins Health System Corporation (together "Hopkins") for violating the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Pending is Hopkins's motion to dismiss or, in the alternative, for summary judgment. For the following reasons, the motion for summary judgment will be granted.

I. Background

From January 1998 to August 2007, Whiting worked for Hopkins as a Patient Financial Services Representative. Def.'s Mot. Summ. J., Ex. 1 (Laurice D. Royal Aff. ¶ 3, Sept. 23, 2009). From June 2007 to August 2007, Whiting took medical

leave under the FMLA. *Id*. In approving her request for leave, Hopkins stated that Whiting's balance of FMLA leave would be exhausted on August 8, 2007, and that any additional time off would require a leave of absence for short term disability. Pl.'s Opp., Ex. 8. On August 9, 2007, Whiting was approved for a leave of absence for short term disability through September 10, 2007. Compl. ¶ 19; Royal Aff., Ex. 1. On August 25, 2007, Hopkins terminated Whiting, explaining that it could not hold her position during her absence, and she had been replaced. Compl. ¶ 22; Royal Aff. ¶ 3, Ex. 1.

On September 6, 2007, Whiting filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she had been discharged in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. Royal Aff., Ex. 1.[1] The charge alleged that she had been on FMLA leave because of a disability, and the disability had led to her discharge. *Id*. The parties participated in EEOC-monitored mediation and, on December 21, 2007, reached two settlement agreements, the Mediation Settlement Agreement ("MSA") and the Release and Settlement Agreement ("RSA"). Royal Aff. ¶ 5; Exs.

[1] Whiting's EEOC charge named only Johns Hopkins Health Systems Corporation as her employer. Royal Aff., Ex. 1.

2, 3. Although the MSA was approved by the EEOC, the RSA was not. *Compare* Royal Aff. Ex. 2, *with* Royal Aff. Ex. 3.

Under the MSA, Whiting agreed "not to institute a lawsuit under Title VII of the Civil Rights Act of 1964, . . . the Age Discrimination in Employment Act of 1967, . . . the Equal Pay Act of 1963 . . . and the Americans with Disabilities Act of 1990[.]" Royal Aff., Ex. 2. The MSA also stated that "[the parties] acknowledge that they have entered into a separate supplemental agreement," namely the RSA. *Id*.

Under the RSA, Whiting agreed to release

> [Johns Hopkins Health Systems Corporation], its corporate affiliates and subsidiaries, officers, directors, attorneys, and employees from any and all causes of action, known or unknown, arising out of or in any way relating to [Whiting's] employment, including, but not limited to any claims for breach of contract, wrongful discharge, violation of Title VII . . . the [ADA] . . . the [ADEA], or any other federal, state or municipal statute or ordinance relating to [Whiting's] employment. [Whiting] does not waive any rights or claims that may arise after her execution of [the RSA].

*Id*., Ex. 3. Whiting also agreed that she would "neither file nor cause or permit to be filed on her behalf and . . . waives her right to recover . . . upon filing, any lawsuits, claims, grievances, complaints or charges in any forum, or any dispute arising out of her employment relationship with [Johns Hopkins] through December 20, 2007. *Id*. Whiting received a one-time

cash payment and career counseling from Hopkins in exchange for these promises. *Id.*, Ex. 2.

On June 18, 2009, Whiting sued Hopkins for violating the FMLA. Paper No. 1. On September 24, 2009, Hopkins moved to dismiss or for summary judgment. Paper No. 7.

II. Analysis

A. Standard of Review

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also

"must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

B. Hopkins's Motion

Hopkins argues that Whiting's FMLA suit is barred by the settlement agreements, which released Johns Hopkins Health Systems Corporation and its corporate affiliates (including Johns Hopkins Hospital) "from any and all causes of action, known or unknown, arising out of or in any way relating to [Whiting's] employment." Royal Aff., Ex. 3. Hopkins cites a Department of Labor ("DOL") regulation interpreting the FMLA, that although "employees cannot waive . . . their prospective rights under FMLA," this prohibition "does not prevent the settlement or release of FMLA claims by employees based on past employer conduct without the approval of the [DOL] or a court." 29 C.F.R. § 825.220(d) (2009).

Whiting counters that section 220(d) does not apply because it was promulgated on January 16, 2009, more than a year after the settlement agreements were signed. She argues that applying section 220(d) would violate the strong presumption against retroactive application of statutes and administrative

regulations. *See generally Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1988).

Section 220(d) is a revision of a 1995 DOL regulation that "[e]mployees cannot waive, nor may employers induce employees to waive, their rights under FMLA." 29 C.F.R. § 825.220(d) (2007); *Taylor v. Progress Energy, Inc*., 493 F.3d 454, 456 (4th Cir. 2007). Whiting argues that under the previous rule, employees could not waive their rights under the FMLA either prospectively or retrospectively. She relies principally on *Taylor v. Progress Energy, Inc*., which held that this reading was compelled by the "plain language of [the 1995 version of] section 220(d)." 493 F.3d at 456.[2] Under the 1995 version of

[2] *Taylor* was a split decision of the Fourth Circuit. The majority held that the meaning of "rights" in section 220(d) included claims that had already accrued. Because section 220(d) prohibited the waiver of "rights," it prohibited the settlement of past FMLA claims. *See Taylor*, 493 F.3d at 457-59.

Judge Duncan would have deferred to the DOL's interpretation of section 220(d), namely, that the term "rights" did not include accrued claims, and thus settlement of past FMLA claims was permissible. *Id*. at 464 (Duncan, J., dissenting) (*citing Auer v. Robbins*, 519 U.S. 452, 461 (1997) (deference to agency's interpretation of its own regulation is required unless interpretation is "plainly erroneous or inconsistent with the regulation")). Judge Duncan explained that "[g]iven the existence of at least some measure of ambiguity in the regulation's use of the term "rights" . . . deference to the DOL's interpretation is appropriate under *Auer*." *Id*.

the rule, Whiting contends--and Hopkins does not dispute--that her suit may proceed.

Whiting does not dispute Hopkins's contention that the current version of section 220(d) permits the settlement of past FMLA claims. She does, however, argue that enforcement of the current version should be enjoined because it is "manifestly contrary" to the FMLA.[3]

1. Retroactive Application of Section 220(d)

"Retroactivity is not favored in the law." *Bowen*, 488 U.S. at 208. Generally, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id*. However, when a statute or rule does not change the law but merely clarifies existing law, corrects a misinterpretation by a court, or overrules a wrongly decided case, the statute or rule should apply to the case at bar. *Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004).[4] In determining whether a revision of a rule

[3] Whiting does not contest Hopkins's contention that her signing of the MSA and RSA was knowing and voluntary. *See* Def.'s Mot. Summ. J. 8-10.

[4] "A rule simply clarifying an unsettled or confusing area of the law . . . does not change the law, but restates what the law according to the agency is and always has been: 'It is no more retroactive in its operation than is a judicial determination construing and applying a statute to the case in hand.'" *Pope v. Shalala*, 992 F.2d 473, 483 (7th Cir. 1993)(*quoting Manhattan*

changes or merely clarifies existing law, the Court "looks to statements of intent made by [the enacting body]." *Id*. (*citing Pimba Cortes v. American Airlines, Inc*., 177 F.3d 1272, 1284 (11th Cir. 1999)).

In the preamble to the current version of section 220(d), the DOL stated that this version has "proposed to clarify that the waiver provision in paragraph (d) . . . applies only to prospective FMLA rights." 73 Fed. Reg. 67987 (Nov. 17, 2008). Because "courts had disagreed"[5] about whether the previous version of section 220(d) "prohibits only the prospective waiver of FMLA rights, or also prohibits the retrospective settlement or release of FMLA claims based on past employer conduct," the DOL clarified the rule. *Id*.

The DOL cited *Taylor* and stated that "the Department disagreed with the Fourth Circuit's interpretation of the regulation" and that "[t]herefore, in the interest of clarity,

---

*Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 135 (1936)); *see also Cookeville Reg'l Med. Ctr. v. Leavitt*, 531 F.3d 844, 849 (D.C. Cir. 2008); *ABKCO Music, Inc. v. Lavere*, 217 F.3d 684, 691 (9th Cir. 2000); *Cortes v. American Airlines*, Inc., 177 F.3d 1272, 1283 (11th Cir. 1999); *Liquilux Gas Corp. v. Martin Gas Sales*, 979 F.2d 887, 890 (1st Cir. 1992).

[5] The DOL contrasted *Taylor v. Progress Energy*, 493 F.3d 454 (4th Cir. 2007) (section 220(d) prohibits employees from settling past claims for FMLA violations with employers) with *Faris v. Williams WPC-I, Inc*., 332 F.3d 316 (5th Cir. 2003) (section 220(d) prohibits only prospective waiver of rights).

the Department proposed to make explicit in [section 220](d) . . . that employees and employers are permitted to agree voluntarily to the settlement of past claims." *Id*. The DOL also stated that it had "always intended for the waiver prohibition to apply only to prospective FMLA rights" and that by changing the rule's language, the DOL sought only to rectify "the perceived ambiguity" that had led to conflict among the circuits. *Id*.

Further, the DOL sought to clarify that "an employee could waive . . . FLMA claims based on past conduct by the employer, *whether such claims are filed or not filed, or known or unknown to the employee as of the date of signing the settlement . . . agreement*." *Id*. at 67988 (emphasis added).

These statements establish that the current version of section 220(d) is not a change in the law but a clarification of what the law has been since the original version of the section was promulgated in 1995. Section 220(d) thus permitted Whiting to settle all past claims arising out of her employment with Hopkins, including her FMLA claims.

2. Section 220(d)'s Relationship to the FMLA

Whiting argues that section 220(d) is invalid because it wrongly interprets the FMLA to permit the retrospective waiver of FMLA claims. She does not cite any provision of the FMLA or

its legislative history; rather, she argues that the regulation is invalid because it would "thwart the legislative policy which [the FMLA] was designed to effectuate." Pl.'s Opp. 8.

When Congress has delegated authority "to an agency generally to make rules carrying the force of law, [the Court] give[s] great deference to an administrative implementation of the particular statutory provision." *McDaniels v. United States*, 300 F.3d 407, 411 (4th Cir. 2002) (*quoting United States v. Mead*, 533 U.S. 218, 226-27 (2001)). When agency action is alleged to go beyond that delegated authority, the Court applies the framework of *Chevron U.S.A., Inc. v. NRDC, Inc*. 467 U.S. 837, 842-44 (1984). First, the Court determines whether Congress "has directly spoken to the precise question at issue." *Id*. at 842. "If the intent of Congress is clear, that is the end of the matter." *Id*.

If Congress's intent is unclear, the Court asks "whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843. The challenged regulation "is given controlling weight unless [it] is arbitrary, capricious, or manifestly contrary to the statute." *Id*. at 843-44; *see also Mead*, 533 U.S. at 227. At this stage, the Court asks only whether the agency has articulated a rational basis for its action. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto*

*Ins. Co*., 463 U.S. 29, 43, 50 (1983). The Court is not empowered to substitute its own judgment for that of the agency, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), and will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned, *Bowman Transp., Inc. v. Arkansas-Freight Sys., Inc*., 419 U.S. 281, 286 (1974).

Under 29 U.S.C. § 2654, the Secretary of Labor has the authority to "prescribe such regulations as are necessary to carry out" the FMLA, *i.e*., to make rules carrying the force of law. Thus, under *Chevron* and *Mead*, the Court must give deference to those rules unless the Secretary went beyond her delegated authority in promulgating them. *See Mead*, 533 U.S. at 226-27; *Chevron*, 467 U.S. at 843-44. As the FMLA is silent on the issue of waiver of claims, the Court must determine whether section 220(d)'s allowance of a retrospective waiver is a permissible construction of the FMLA. *Chevron*, 467 U.S. at 842-43.

Whiting relies on the Fourth Circuit's reasoning in *Taylor*, in which the court construed the previous version of section 220(d) to prohibit the retrospective waiver of FMLA claims. Although the Fourth Circuit relied primarily on the text of the rule and its preamble, the court also found that permitting

retrospective waiver would defeat the policy that FMLA was designed to implement.[6] The court analogized the FMLA to the Fair Labor Standards Act ("FLSA"), which prohibits the unsupervised waiver of employee claims, *see Taylor*, 493 F.3d at 460,[7] and contrasted it with Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"), which permit waiver. The court explained that unlike the FMLA and FLSA, Title VIII and the ADEA "are not labor standards laws." *Id*. "Rather, Title VII and the ADEA were enacted to outlaw discrimination against specific classes of employees and provide redress for injuries caused by discrimination." *Id*. at 461. Although "[p]rivate settlements further these purposes," they do not further the purposes of the FMLA "where settlements that are cheaper than compliance would encourage noncompliance, thereby undermining the Act's purpose

[6] The Fourth Circuit's decision in *Taylor* was based primarily on the language of the 1995 version of section 220(d), which differed from the current version. *Taylor* did not hold that its interpretation followed from the unambiguous terms of the FMLA and left no room for agency discretion. *See Nat'l Cable & Telecomms Ass'n v. Brand X Internet Servs*., 545 U.S. 967, 982-83 (2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.")

[7] *See also* S. Rep. No. 103-3, at 5 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 7 (stating that the FMLA "fits squarely within the tradition of labor standards laws that . . . preceded it").

of imposing minimum standards for family and medical leave.” *Id*.

The DOL responded to the Fourth Circuit’s reasoning in the preamble to the current version of section 220(d). Stating that the rule was “consistent with the statute,” the DOL advanced four reasons to support its interpretation of the FMLA. First, “[n]othing in the text of the FMLA requires Department or court approval of a settlement or release of FMLA claims based on past employer conduct or prohibits waiver of [such claims].” 73 Fed. Reg. 67987. Second, “the enforcement provision of the FMLA [29 U.S.C. § 2617(b)(1)] does not reference the supervised settlement provision in . . . the FLSA [29 U.S.C. § 216(c)].” *Id*. Third, the “prohibition against private settlements under the FLSA is based on policy considerations unique to the FLSA,” which, unlike the FMLA, “was intended to protect the most vulnerable workers, who lacked the bargaining power to negotiate a fair wage or reasonable work hours with their employers.” *Id*. Fourth, “the restrictions on private settlements under the FLSA have not been read into other employment statutes that reference the FLSA.” *Id*. The DOL offers the example of the ADEA, which although “explicitly referenc[ing] the supervised settlement provision of the FLSA,” has not been interpreted to prohibit settlements of claims. *Id*.

As the Supreme Court has explained, "*Chevron* established a presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Nat'l Cable Telecomms. Ass'n v. Brand X Internet Servs*., 545 U.S. 967, 982 (2005). Although the DOL's reasoning in support of its promulgation of section 220(d) may be debated (as seen in the *Taylor* decision), section 220(d) is not an unreasonable application of the FMLA. Congress has granted the DOL great latitude to enact rules that implement the FMLA, and the Court may not second-guess the Secretary absent an irrational application of the statute. Accordingly, section 220(d) is not "arbitrary, capricious, or manifestly contrary to the statute."

Because Whiting (1) was permitted to waive her rights under the FMLA against Hopkins and (2) waived those rights by entering into the MSA and RSA, Hopkins's motion for summary judgment will be granted.

January 6, 2010
Date

__________/s/__________________
William D. Quarles, Jr.
United States District Judge